UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMANUEL SHAWN COATES,

        Plaintiff,                Case No. 1:13-cv-193

v.                                      Honorable Janet T. Neff

KELLEY A. GORHAM et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This action was originally filed in the Eastern District of Michigan and was transferred to this Court. The Court has granted Plaintiff leave to proceed *in forma pauperis* and Plaintiff will pay the filing fee when funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff presently is incarcerated at the Carson City Correctional Facility. In his *pro se* complaint, he sues Parole Agent Kelley A. Gorham, Field Supervisor Laraine Van Lopik, Michigan Parole Board Chairperson Thomas R. Combs, Michigan Parole Board Members Barbara Sampson, Unknown Party #1 and Unknown Party #2, Area Manager Kimberly Luther and Michigan Department of Corrections' (MDOC) Director Daniel H. Heyns.

Plaintiff's complaint concerns his parole revocation. On May 4, 2011, Plaintiff, an African American, was paroled in Van Buren County for 24 months and assigned to Parole Agent Gorham. Plaintiff lived at a motel with other parolees. During their first meeting, Gorham informed Plaintiff that he had to wear a Global Positioning System (GPS) throughout his parole. Plaintiff initially contested the GPS because he did not have a sex offender history. However, Gorham told Plaintiff that if he did not wear it, Plaintiff would be sent back to prison. The next day, Plaintiff met with Gorham again and Gorham provided Plaintiff with a verification letter for sex offender registration purposes. In the verification letter, Plaintiff noted that there was a telephone number that he could not verify. When Plaintiff protested, Gorham threatened to lock Plaintiff up if he did not register the letter.

On May 8, 2011, Plaintiff was summoned to Agent Gorham's office by GPS. Gorham informed Plaintiff that the prosecutor was appealing the parole board's decision to release him on parole. Gorham also threatened to send Plaintiff to prison unless Plaintiff told her what other parolees were doing at the motel. Plaintiff reluctantly agreed to be Gorham's snitch.

During another visit to Agent Gorham's office, Plaintiff ran into Field Supervisor Van Lopik. Plaintiff asked Van Lopik why she allowed Gorham to "abuse her authority by forcing

[Plaintiff] to tell on the other parolees at the motel and threatening to send [him] back to prison if [Plaintiff] refused to do so." (Compl., docket #1, Page ID#6.) Van Lopik stated that if Plaintiff continued to complain, he may end up in prison.

In June 2011, Plaintiff complains that Agent Gorham improperly changed Plaintiff's curfew imposed by the Michigan Parole Board. When Gorham refused to explain her actions, Plaintiff contacted the parole office's secretary to obtain the area manager's contact information. Apparently, Gorham learned of Plaintiff's request and threatened that she and Field Supervisor Van Lopik would make sure Plaintiff went to prison if he made any phone calls to the area manager.

In July 2011, Plaintiff wrote a letter to the parole board complaining that his curfew had been changed by Agent Gorham. In August 2011, Plaintiff received a response that his curfew should not have changed. Apparently, the parole board forwarded its response to Gorham and Field Supervisor Van Lopik. As a result, Gorham rebuffed Plaintiff for writing to the parole board and mentioned again that he would be sent back to prison.

On December 6, 2011, Plaintiff learned that the prosecutor's appeal had been denied. Plaintiff then informed Agent Gorham that he was finished being her snitch. On January 3, 2012, Gorham informed Plaintiff that the prosecutor was appealing the trial court's decision. She told Plaintiff that if he wanted to stay out of prison, Plaintiff had better start letting her know what was going on at the other motel with the other parolees. Plaintiff reluctantly agreed.

In January 2012, Agent Gorham informed Plaintiff that she was transferring Plaintiff from a sex offender treatment program in Paw Paw to one in Kalamazoo. Plaintiff told Gorham that he was concerned about driving to Kalamazoo because his car had mechanical problems, but she ignored his concerns.

On February 6, 2012, Plaintiff was to report to the sex offender treatment program in Kalamazoo. Because Gorham allegedly gave Plaintiff the wrong directions, Plaintiff arrived late to his first meeting. At the meeting, Plaintiff discovered that he was not expected by the treatment program staff nor did the staff understand why Gorham would send Plaintiff to Kalamazoo instead of Paw Paw. Plaintiff argues that Defendants Gorham, Van Lopik and Luther knew that Plaintiff would eventually miss a meeting due to problems with his car, and, thus, violate his parole.

The next day, Plaintiff was immediately taken into custody at Agent Gorham's office. Plaintiff was notified of the following parole violations: (1) Plaintiff failed to attend sex offender treatment; (2) Plaintiff violated his curfew; (3) Plaintiff wrongfully possessed alcohol; (4) Plaintiff wrongfully possessed a device capable of connecting to the Internet on February 5, 2012; (5) Plaintiff wrongfully possessed a device capable of connecting to the Internet on January 22, 2012; and (6) Plaintiff failed to register in compliance with the Michigan sex offender registration requirements. (Attach. to Compl., Page ID#46.) Gorham recommended that Plaintiff plead guilty to his parole violation charges. Plaintiff argues that white parolees who violate their parole repeatedly are never sent back to prison.

On February 14, 2012, Plaintiff was transferred to the Charles Egeler Reception and Guidance Center. Before Plaintiff was transferred, he argues that Agent Gorham attempted to extort money from his last paycheck.

On February 23, 2012, Plaintiff pled not guilty to all the parole violation charges. On February 29, 2012, Agent Gorham was notified that Plaintiff had pled not guilty. On March 5, 2012, Gorham allegedly contacted the Michigan State Police and filed a criminal charges against Plaintiff for failing to comply with his sex offender registry requirements. Plaintiff argues that

Gorham retaliated against him for pleading not guilty. Plaintiff further states that Gorham's parole violation report contained inaccurate information. He claims that Field Supervisor Van Lopik and Area Manager Luther endorsed the false parole violation report.

During the pendency of his criminal prosecution, Plaintiff sent many letters and grievances to Agent Gorham, Field Supervisor Van Lopik, and Area Manager Luther. On August 22, 2012, Plaintiff complains that Luther contacted the grievance coordinator to place Plaintiff on modified grievance access in violation of MDOC policy directives.

On August 28, 2012, Plaintiff pled nolo contendere to a reduced misdemeanor charge of failure to register a cell phone. On September 26, 2012, five of the six parole violation charges were dismissed. However, Plaintiff was found guilty of his failure-to-register parole violation charge because of his misdemeanor conviction.

On November 19, 2012, Plaintiff sent a letter to the Parole Board Chairperson Combs suggesting that he was being retaliated against for filing complaints against Agent Gorham. On December 5, 2012, Plaintiff also sent a letter to MDOC Director Heyns that the parole board was not doing their job.

On December 11, 2012, the Michigan Parole Board revoked Plaintiff's parole for a period of 48 months. (Attach. to Compl., Page ID#46.) Plaintiff argues that the parole board violated MDOC Policy Directive 06.05.104 (effective June 1, 2012) by exceeding the amount of time for a parole continuation. Plaintiff also argues that his equal protection rights have been violated because two other prisoners have been re-paroled after being found guilty of parole violation charges that were more severe than Plaintiff's violation.

In summary, Plaintiff alleges that Defendants Gorham, Van Lopik, Combs, Sampson, Luther, Unknown Party #1 and Unknown Party #2 violated his First, Eighth and Fourteenth Amendment rights. He also claims those Defendants engaged in a civil conspiracy against him. Plaintiff further argues that Defendant Heyns failed to take any disciplinary action with the other Defendants. Finally, Plaintiff argues that Defendants violated MDOC policy directives and Defendant Gorham extorted his money in violation of state law.

Plaintiff seeks injunctive relief in the form of "releas[ing] him back on parole," and expungement of "the parole violation charges" and "the 48 month continuance." (Compl., Page ID#24.) Plaintiff also requests compensatory and punitive damages and declaratory relief.

## Discussion

### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Parole Revocation

Plaintiff alleges that Defendants violated his First, Eighth and Fourteenth Amendment rights as well as engaged in a civil conspiracy to revoke his parole and send him back to prison. The Supreme Court has recognized a parolee's due process right to adequate procedures leading up to the revocation of parole. *See Morrissey v. Brewer*, 408 U.S. 471, 481, 489 (1972). A civil rights action, however, is an inappropriate vehicle by which to challenge revocation of parole. In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court held that when a state prisoner is challenging the very fact or duration of his physical imprisonment, his sole federal remedy is by writ of habeas corpus. 411 U.S. at 500. Despite the literal breadth of § 1983, habeas corpus is the "exclusive

remedy" for attacking the validity of state confinement. 411 U.S. at 489. Otherwise, the Court reasoned, Congress' carefully crafted habeas structure, requiring exhaustion of state remedies by state prisoners, would be undermined by permitting state prisoners to invoke civil rights jurisdiction, which does not require exhaustion. Inasmuch as Congress had amended the habeas statute in 1948 to require exhaustion of state remedies, the *Preiser* Court concluded that it "would wholly frustrate explicit congressional intent to hold that the [challengers] could evade this requirement by the simple expedient of putting a different label on their pleadings." *Id.* at 489-90.

The *Preiser* Court dealt with a civil rights action seeking a restoration of state good-time credits. However, the courts have applied its reasoning to invalidate any civil rights action that directly or by implication challenges the fact or duration of confinement. Subsequently, the Supreme Court applied the *Preiser* doctrine to preclude a civil rights action for damages alleging malicious prosecution, even though the complaint did not explicitly seek release from custody. *Heck v. Humphrey*, 512 U.S. 477 (1994). Under the holding in *Heck*, any civil rights action calling into question the lawfulness of confinement must be preceded by a judicial finding, in a separate habeas corpus action, that the conviction or confinement was unconstitutional. 512 U.S. at 486-87; *see also*, *Edwards v. Balisok*, 520 U.S. 641 (1997) (holding that a claim for declaratory relief and monetary damages based on allegations that unconstitutional procedures had been followed resulting in a loss of good-time credits was not cognizable under section 1983, as the prisoner's allegations necessarily implied the invalidity of the punishment). The federal courts unanimously hold that a state prisoner's attack on a decision to revoke parole must be brought by habeas corpus action, after exhaustion of state remedies. *See Norwood v. Mich. Dep't of Corr.*, 67 F. App'x 286, 288 (6th Cir. 2003); *Miskowski v. Martin*, 57 F. App'x 246, 248 (6th Cir. 2003); *White v. Gittens*, 121 F.3d 803,

806 (1st Cir. 1997); *Brewer v. Dahlberg*, 942 F.2d 328 (6th Cir. 1991); *Hopkins v. Kerns*, No. 89-1962, 1990 WL 40076 (6th Cir. Apr. 9, 1990); *Thomas v. Torres*, 717 F.2d 248 (5th Cir. 1983); *Strader v. Troy*, 571 F.2d 1263, 1269 (4th Cir. 1978).

The present case falls squarely within the *Heck* bar, as Plaintiff expressly challenges his parole revocation. Plaintiff seeks injunctive relief in the form of release on parole and expungement of his parole violation charges and his 48-month continuance. Plaintiff's sole federal remedy to challenge the revocation of his parole is by writ of habeas corpus. *Norwood*, 67 F. App'x at 287-88. Plaintiff has not demonstrated the invalidity of his parole revocation by either a state or federal habeas corpus decision. Therefore, Plaintiff's complaint will be dismissed for failure to state a claim upon which relief can be granted.

Moreover, Plaintiff's allegations against Defendant Heyns only suggest that Heyns did not respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). In addition, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through

the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff's claims against Defendant Heyns are subject to dismissal for the additional reason that he fails to allege any active unconstitutional behavior.

### B. State Law

Plaintiff argues that Defendant Gorham violated state law by extorting money from Plaintiff and Defendants violated Michigan policy directives. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

### C. Motions

Plaintiff has filed a motion to appoint counsel (docket #10) and an ex parte motion to transfer his case back to the Eastern District of Michigan for lack of progress (docket #18). Because this Court is dismissing Plaintiff's action, Plaintiff's motions will be denied.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997), overruled on other grounds by *Jones v. Bock*, 549 U.S. 199, 206, 211-12 (2007). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment and Order consistent with this Opinion will be entered.

Dated: July 24, 2013          /s/ Janet T. Neff
                                                     JANET T. NEFF
                                                     United States District Judge